[958 NE2d 894, 934 NYS2d 765]

CPS Operating Company LLC, Appellant, v Pathmark Stores, Inc., Respondent.

Argued October 11, 2011; decided November 15, 2011

## POINTS OF COUNSEL

*Morrison Cohen LLP*, New York City (*Y. David Scharf, David A. Piedra* and *Jerome Tarnoff* of counsel), for appellant. I. Because performance of the assignment contract would violate public policy, the contract is void. (*328 Owners Corp. v 330 W. 86 Oaks Corp.*, 8 NY3d 372; *City of Peekskill v Schurr*, 14 AD3d 643; *Pike Realty Co., LLC v Cardinale*, 21 Misc 3d 1139[A], 2008 NY Slip Op 52422[U]; *NYCTL 1998-1 Trust v Mayfield*, 17 Misc 3d 268; *Shields v Gross*, 58 NY2d 338; *Barnes v Oceanus Nav. Corp., Ltd.*, 21 AD3d 975; *City of New York v 17 Vista Assoc.*, 84 NY2d 299; *Szerdahelyi v Harris*, 67 NY2d 42; *Soto v State Farm Ins. Co.*, 83 NY2d 718; *Kalisch-Jarcho, Inc. v City of New York*, 58 NY2d 377.) II. Even if the assignment contract was not void as against public policy, the assignment contract nevertheless required Pathmark Stores, Inc. to obtain New York City Department of Housing Preservation and Development consent. (*Matter of Progressive Northeastern Ins. Co. [Heath]*, 41 AD3d 1321; *Santamaria v 1125 Park Ave. Corp.*, 238 AD2d 259; *Matter of New York City Asbestos Litig.*, 41 AD3d 299; *Matter of Lipper Holdings v Trident Holdings*, 1 AD3d 170; *328 Owners Corp. v 330 W. 86 Oaks Corp.*, 8 NY3d 372; *DiPietro v County of Westchester*, 237 AD2d 325; *City of Peekskill v Schurr*, 14 AD3d 643; *Matter of Bombay Realty Corp. v Magna Carta*, 100 NY2d 124; *150 Broadway N.Y. Assoc., L.P. v Bodner*, 14 AD3d 1; *BP A.C. Corp. v One Beacon Ins. Group*, 8 NY3d 708.) III. Pathmark Stores, Inc.'s transfer without New York City Department of Housing Preservation and Development's consent would materially breach the supermarket lease and violate section 8 (f) of the assignment contract. (*328 Owners Corp. v 330 W. 86 Oaks Corp.*, 8 NY3d 372; *DiPietro v County of Westchester*, 237 AD2d 325.) IV. Pathmark Stores, Inc. could not deliver insurable title absent an estoppel certificate from the landlord that it refused to provide. (*Gargano v Rubin*, 200 AD2d 554; *Kopp v Barnes*, 10 AD2d 532; *Merritt Hill Vineyards v Windy Hgts. Vineyard*, 61 NY2d 106; *Hudson-Port Ewen Assoc. v Chien Kuo*, 165 AD2d 301, 78 NY2d 944; *Boecher v Borth*, 51 AD2d 598; *Van Vliet & Place, Inc. v Gaines*, 249 NY 106; *McAndrew v Lanphear*, 280 App Div 6; *Nowak v Rametta*, 43 AD3d 1120.)

*Pillsbury Winthrop Shaw Pittman LLP*, New York City (*E. Leo Milonas, Frederick A. Brodie* and *Anne C. Lefever* of counsel), for respondent. I. The assignment contract was not void. (*Charlebois v Weller Assoc.*, 72 NY2d 587; *328 Owners Corp. v 330 W. 86 Oaks Corp.*, 8 NY3d 372; *Neponsit Prop. Owners' Assn. v Emigrant Indus. Sav. Bank*, 278 NY 248; *Lloyd Capital Corp. v Pat Henchar, Inc.*, 80 NY2d 124; *Flegenheimer v Brogan*, 259 App Div 347, 284 NY 268; *Szerdahelyi v Harris*, 67 NY2d 42; *Barnes v Oceanus Nav. Corp., Ltd.*, 21 AD3d 975; *Soto v State Farm Ins. Co.*, 83 NY2d 718; *Shields v Gross*, 58 NY2d 338; *Kalisch-Jarcho, Inc. v City of New York*, 58 NY2d 377; *Public Serv. Mut. Ins. Co. v Goldfarb*, 53 NY2d 392.) II. The Appellate Division correctly held that Pathmark Stores, Inc. was not required to obtain New York City Department of Housing Preservation and Development approval as a condition of closing. (*Suffolk Bus. Ctr. v Applied Digital Data Sys.*, 78 NY2d 383; *Stirn v 293 Ave. B Corp.*, 224 App Div 458; *Dunn v Arniotes*, 15 Misc 3d 1144[A], 2007 NY Slip Op 51141[U]; *O.W. Siebert Co. v Kramer*, 107 Misc 2d 520; *Rozen v 7 Calf Cr., LLC*, 52 AD3d 590; *Utah v Dickinson*, 275 App Div 120, 300 NY 610; *325 Schermerhorn, LLC v Nevins Realty Corp.*, 23 Misc 3d 1109[A], 2009 NY Slip Op 50686[U], 76 AD3d 625; *Dukas v Tolmach*, 2 AD2d 57; *Riverside S. Planning Corp. v CRP/Extell Riverside, L.P.*, 13 NY3d 398; *McCluskey v Cromwell*, 11 NY 593.) III. The Appellate Division correctly found that the landlord's letter did not cause a breach of the assignment contract. (*King Party Ctr. of Pitkin Ave. v Minco Realty*, 286 AD2d 373; *Cohn v White Oak Coop. Hous. Corp.*, 243 AD2d 440.) IV. Pathmark Stores, Inc. was not required to obtain an estoppel from the landlord in order to convey insurable title. (*Laba v Carey*, 29 NY2d 302; *Hudson-Port Ewen Assoc. v Chien Kuo*, 165 AD2d 301, 78 NY2d 944.)

#### OPINION OF THE COURT

SMITH, J.

We interpret a contract to assign a lease of real property, and hold that the risk that the City of New York might not permit the assignment was one that the buyer agreed to take. That risk did not give the buyer an excuse for terminating the contract.

I

The property in question is on the Lower East Side of Manhattan, and was sold by the City for $475,000 in 1981 to

the sponsor of an urban renewal project. The agreement between the City and the sponsor, called a Land Distribution Agreement (LDA), contained provisions designed to assure that, for at least 25 years, the land would be used for a Pathmark supermarket. The provision relevant to this case says:

> "The Sponsor represents and agrees that the Disposition Area shall be developed as a supermarket shopping center which Sponsor shall lease for a twenty-five year term to Supermarket General Corporation for operation of a Pathmark Supermarket. The City consents and approves such lease disposition of the Disposition Area, (the 'Pathmark Lease'), provided that until a period of twenty-five (25) years has elapsed following the completion of the improvements comprising the Project, the Sponsor may lease to a Lessee other than Supermarket General Corporation or may permit the sublease of the Pathmark Lease only upon obtaining the prior written approval of [the City] which shall not be unreasonably withheld or delayed."

The parties do not dispute that the "completion of the improvements" occurred in January 1984, so that the restriction would expire in January 2009.

As the LDA contemplated, the project sponsor leased the property to Supermarket General Corporation, now known as Pathmark Stores, Inc., defendant in the present case. The sponsor later transferred the property to Pathmark's present landlord.

By the early twenty-first century, the value of Lower East Side real estate had increased enormously, and Extell Development, Inc., plaintiff's parent, became interested in developing the property for residential use. After negotiations with both the landlord and Pathmark, plaintiff agreed in 2007 to acquire Pathmark's leasehold interest for $87 million. Plaintiff and Pathmark entered into a Leasehold Assignment Contract on August 14, 2007, and plaintiff made a deposit of $5 million, later increased to $6 million in exchange for an extension of the closing date. But after the agreement was signed, the real estate market fell, and plaintiff, finding the deal no longer attractive, terminated the agreement on the eve of closing.

Plaintiff does not dispute that it terminated for economic reasons, but it claims that it was entitled to do so because Pathmark had breached the agreement. Pathmark, denying that it was in breach, kept plaintiff's $6 million deposit, and plaintiff

brought this lawsuit to recover it. Pathmark counterclaimed for a declaratory judgment and damages.

Supreme Court denied both parties' motions for summary judgment (2009 NY Slip Op 30433[U] [2009]). Pathmark appealed, and the Appellate Division, with one Justice dissenting, reversed and granted summary judgment dismissing the complaint (*CPS Operating Co. LLC v Pathmark Stores, Inc.*, 76 AD3d 1 [1st Dept 2010]). The Appellate Division granted leave to appeal to this Court on a certified question (2010 NY Slip Op 77953[U] [2010]), and we now affirm.

## II

The case turns on whether Pathmark breached the Leasehold Assignment Contract, thus giving plaintiff a right to terminate it. Plaintiff relies primarily on the following provision of the contract: "Seller [Pathmark] hereby represents and warrants to Buyer [plaintiff], as of the date hereof that: (a) Seller is not prohibited from consummating the transactions contemplated in this Contract, by any . . . agreement, instrument or restriction to which Seller is a party or is bound (other than . . . any . . . Permitted Exceptions) . . . ."

Plaintiff says that Pathmark was "prohibited from consummating" the lease assignment transaction because, under the 1981 LDA, the lease could not be assigned before January 2009 without the City's consent. There may be a number of flaws in this argument—among them the fact that Pathmark was not a party to the LDA—but one fatal flaw is enough to dispose of the case: The LDA was one of the "Permitted Exceptions" that were excluded from Pathmark's representation and warranty. Included in the contract's list of "Permitted Exceptions" was: "Terms, Covenants, Conditions, Provisions and Reverter set forth in the Land Disposition Agreement dated as of 6/3/81 . . . ."

Thus, the risk that Pathmark might be "prohibited from consummating" the assignment agreement by the LDA was a risk that plaintiff expressly agreed to take. Perhaps the use of the words "Permitted Exceptions" to describe this risk-shifting is unusual; it may well be correct, as the dissenting Justice in the Appellate Division said, that " '[p]ermitted exceptions' are generally understood as encumbrances listed in a real property contract that need not be removed by the seller" (76 AD3d at 13). But the words were obviously used in a broader sense here—the "Permitted Exceptions" are expressly excluded from Pathmark's representation and warranty that it was free to

close the deal. The risk that an objection from the City would prevent the closing, or require rescission, may have been thought a small one: we see no obvious reason why the City would not have consented to an assignment for residential development, particularly when the restriction, assuming it to be binding, had only a year and a half to run anyway. But however great or small the risk, plaintiff took it.

Contrary to the suggestion made by plaintiff and the Appellate Division dissent, this allocation of risk did not violate public policy. We may assume for present purposes that, at least until January 2009, there could be no transfer and no residential development without City approval. No public policy prohibited plaintiff from agreeing, as it did, but this was plaintiff's problem and not Pathmark's—that, if the City thwarted the transaction, Pathmark could still retain plaintiff's deposit, and plaintiff would be in breach for failure to close.

Plaintiff's remaining argument is without merit.

Accordingly, the order of the Appellate Division should be affirmed, with costs. The certified question should be answered in the affirmative.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO, READ, PIGOTT and JONES concur.

Order affirmed, etc.